**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| LIMEWR FYRE OÜ<br>F. J. Wiedemanni tn 6-5a, Kesklinna linnaosa<br>10126 Tallinn, Estonia,<br><br>    Plaintiff,<br><br>v.<br><br>FYREFESTIVAL.COM, an Internet Domain Name,<br><br>    Defendant. | Civil Action No. 1:25-cv-1629 |

## COMPLAINT

Plaintiff LimeWR Fyre OÜ (together with its predecessors-in-interest to the trademark rights asserted herein, "Plaintiff" or "LimeWire"), through counsel, alleges as follows for its *in rem* Complaint against Defendant FYREFESTIVAL.com (the "Defendant Domain Name").

## NATURE OF THE SUIT

1. This is an *in rem* action for cybersquatting and trademark infringement under the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA") and Lanham Act, to stop the registrant of the Defendant Domain Name from ongoing and continuous bad faith misuse of Plaintiff's trademarks for his/her/its own financial gain.

2. The Plaintiff in this action, LimeWire, is the owner of all right, title, and interest in, and consumer goodwill associated with, the brand FYRE FESTIVAL and its trademark rights, having acquired such rights from Fyre Holdings, Inc. (the original creator and owner of the Fyre Festival).

## PARTIES

3.      LimeWR Fyre OÜ is an Estonian limited liability company with its principal place of business at F. J. Wiedemanni tn 6-5a, Kesklinna linnaosa, 10126 Tallinn, Estonia.

4.      FYREFESTIVAL.com is an Internet domain name registered to a person or entity who employed a privacy service to conceal his/her/its identifying information, and the current domain name registration information for FYREFESTIVAL.com shows the name "Liam Spencer." Domain records reflecting the current domain registration are attached as Exhibit A.

## JURISDICTION AND VENUE

5.      This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).

6.      This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has *in rem* jurisdiction over the Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A), which provides for *in rem* jurisdiction for "any right of the owner of a mark registered in the Patent and Trademark Office, or protected under [15 U.S.C. § 1125] subsection (a) or (c)." *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(ii) because the domain registration record for the Defendant Domain Name has reflected a privacy service, and records now indicate that the registrant resides outside the United States, and therefore Plaintiff cannot obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A), or alternatively, Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

8. Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Plaintiff will give notice of the violations of its rights, and its intent to proceed *in rem*, to the contact address set forth in the registration records for the Defendant Domain Name.

9. Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the registry operator of the .COM domain registry, VeriSign, Inc., is situated in this judicial district, and the Defendant Domain Name is a .COM domain name.

## LIMEWIRE'S RIGHTS IN THE FYRE FESTIVAL MARKS

10. On or around July 23, 2025, Plaintiff and Fyre Holdings, Inc. executed a purchase agreement, through which among other things, Plaintiff acquired all right, title, interest, and goodwill for all common law and registered trademark rights and intellectual property associated with the name FYRE FESTIVAL (the "FYRE FESTIVAL Marks").

11. As part of the transaction, Fyre Holdings LLC completed trademark assignments to Plaintiff transferring all rights, title, and interest in FYRE FESTIVAL Marks to Plaintiff, which were recorded by the U.S. Patent and Trademark Office on September 23, 2025 (attached hereto as Exhibit B).

12. Since at least as early as December 2016 when the term Fyre Festival was first publicly promoted, the mark has been exclusively associated with the famous/infamous "luxury music festival," the "Fyre Festival." To say that the "Fyre Festival" has been a viral sensation is an understatement. The campaign to promote Fyre Festival was unprecedented, reaching hundreds of millions of people within a span of days.

13. Global influencers began promoting the Fyre Festival in December 2016, with a carefully coordinated global social media campaign. This campaign involved a video featuring models and the Fyre Festival logo, promising "an immersive music festival." Details from Fyre

Media's investor pitch deck (https://www.vanityfair.com/news/2017/05/fyre-festival-pitch-deck) claimed that Fyre recruited 400 influencers to post an orange tile on Instagram at 5:00 p.m. on December 12, 2016, and that the result was the post reaching 300 million people within 24 hours. https://journals.library.columbia.edu/index.php/CBLR/announcement/view/184.

14.     During and after the initial marketing blitz, top celebrities, models and others were clamoring to promote the event and brand. Fyre Festival was created and marketed as an unprecedented, opulent Bahamas getaway, with yachts and luxury cabanas, celebrity-chef catering, and the greatest live music entertainment that anyone had ever imagined. The media hysteria generated by the festival's founders and team is studied and recognized as a marketing success.

15.     During and since the original festival, the owners of the mark sold merchandise, shirts and other FYRE FESTIVAL branded items. The Fyre Festival was covered in two documentaries, including a Netflix documentary released in 2019. In 2025, the original owners worked to launch a second festival, and a Broadway musical is currently in production. In June 2025, the original owners placed the brand for sale via auction and Plaintiff succeeded in acquiring all rights, title and interest in the FYRE FESTIVAL Marks.

16.     On September 16, 2025, Plaintiff publicly announced its acquisition of the FYRE FESTIVAL and its plans to relaunch the brand. LimeWire buys Fyre Festival, asking 'What Could Possibly Go Wrong?', https://www.cnbc.com/2025/09/16/limewire-buys-fyre-festival-asking-what-could-possibly-go-wrong.html?msockid=16dd2ffcc1206884323d3b2ac0886907.

17.     Additionally, Plaintiff announced its collaboration with VISA and Ryan Renyolds on a new VISA advertisement and slogan launched this month featuring the FYRE FESTIVAL

4

mark. https://www.fastcompany.com/91404189/visa-just-let-ryan-reynolds-mess-with-its-famous-slogan.

18. The FYRE FESTIVAL Marks have enjoyed extensive and undeniable common law trademark rights since at least December 12, 2016. The term "FYRE FESTIVAL" is exclusively associated with the festival as a strong common law trademark in addition to the registered trademark rights in FYRE FESTIVAL owned by Plaintiff.

19. The brand's renown and strong consumer recognition is also evidenced through the bad acts complained of herein.

20. In addition to its common law trademark rights, Plaintiff is the owner of U.S. federal trademark registrations using the term FYRE FESTIVAL:

| U.S. Trademark Registration No. | Date Filed/Registered |
|---|---|
| FYRE FESTIVAL Registration No. 5962393 | Apr. 14, 2018/Jan. 14, 2020 |
| FYRE FESTIVAL Registration No. 7322932 | Apr. 14, 2018/Mar. 5, 2024 |

Copies of the registration records are attached hereto as Exhibit C.

21. The aforementioned registrations constitute *prima facie* evidence of the validity of, and Plaintiff's exclusive rights to use, the identified marks. Plaintiff's statutory trademark rights conveyed by the aforementioned registrations, together with the common law rights described herein, are referred to collectively as the "FYRE FESTIVAL Marks."

**UNLAWFUL REGISTRATION AND/OR USE OF THE DOMAIN NAME**

22. On information and belief, the Defendant Domain Name was most recently re-registered on or around July 21, 2025.

23. On information and belief, since its acquisition by the current registrant, the FYREFESTIVAL.com domain name has been used to redirect to a travel booking website (greaterantillieshotels.com) for which the domain registrant receives compensation.

24. In the body of the destination website there is text that specifically references and targets the FYRE FESTIVAL mark. This text identifies the mark, in whole, and appears to be used for search engine optimization (SEO) to deliberately mislead consumers searching for the mark. The misuse of the FYREFESTIVAL.com domain name to direct consumers to a travel website where the registrant unjustly profits coupled with the infringing text demonstrates a willful and deliberate infringement of the Plaintiff's trademark rights. Example screenshots of the offending website follow:





Screenshots from Archive.org Original Capture July 17, 2025, Accessed September 17, 2025, https://web.archive.org/web/20250717022913/http://www.greaterantilleshotels.com/en/fyrefestival.html

25. This deliberate targeting and misuse of Plaintiff's trademark rights has been continuous through at least July 17, 2025.

26. In view of the association between the FYRE FESTIVAL mark and the Greater Antilles Hotel booking website, it is apparent that FYREFESTIVAL.com has been used, registered, and/or re-registered with knowledge of the FYRE FESTIVAL trademark, and a bad faith intent to capitalize on those rights for the registrant's financial gain. This unauthorized use of the FYRE FESTIVAL mark constitutes both cybersquatting and trademark infringement under the Lanham Act and Anti-Cybersquatting Consumer Protection Act and entitles Plaintiff to relief to protect both its brand and its customers.

7

27. On information and belief, the current registrant of FYREFESTIVAL.com has never used the domain to resolve to a website with substantive content. It has been used, however, by the registrant of the domain name to obtain compensation from travel booking links.

28. On information and belief, the registrant of the Defendant Domain Name receives financial compensation when visitors navigate to FYREFESTIVAL.com and click on one of the links.

29. On information and belief, the registrant of the Defendant Domain Name has had actual notice of the FYRE FESTIVAL Marks, since prior to registering or re-registering the Defendant Domain Name.

30. None of the links or references to the FYRE FESTIVAL Marks are or have ever been authorized by Plaintiff, and, on information and belief, many of the uses of the FYRE FESTIVAL Marks direct consumers to service providers that also have no affiliation with Plaintiff and are not authorized to use the FYRE FESTIVAL Marks.

31. On information and belief, the registrant of the Defendant Domain Name has been using the FYRE FESTIVAL Marks, without Plaintiff's authorization, to offer and/or promote services the same or substantively identical to Plaintiff's own services.

32. On information and belief, the registrant of the Defendant Domain Name has been offering and/or promoting services under the FYRE FESTIVAL Marks, without Plaintiff's authorization, for his/her/its own financial gain, through, *inter alia*, increased web traffic from misdirected viewers attempting to reach Plaintiff's official website, pay-per-click advertising including advertising that uses the FYRE FESTIVAL Marks, and sales of services related to the FYRE FESTIVAL Marks.

33. The Defendant Domain Name does not reflect the legal name of its registrant.

34. Since at least as early as the date of the most recent re-registrations, the registrant of the Defendant Domain Name has not engaged in *bona fide* commercial use of the FYRE FESTIVAL Marks for a website accessible under the Defendant Domain Name, and is instead attempting to misrepresent an affiliation with Plaintiff and/or its marks by displaying promotions for the particular types of services associated with the FYRE FESTIVAL Marks.

35. The website displayed by the registrant of the Defendant Domain Name is likely to be confused with Plaintiff's legitimate online locations.

36. On information and belief, the registrant of the Defendant Domain Name registered and/or re-registered the Defendant Domain Name with intent to divert consumers away from Plaintiff's online locations, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendant Domain Name and the sites displayed through use of the Defendant Domain Name.

37. The registrant of the Defendant Domain Name provided material and misleading false contact information when registering/re-registering/renewing the Defendant Domain Name through consistent use of a privacy service to conceal the person/entity's true identity.

## **COUNT ONE:**
**(Violation of the Federal Anti-Cybersquatting Consumer Protection Act)**

38. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

39. Plaintiff's FYRE FESTIVAL Marks are distinctive and were distinctive prior to the registrations of the Defendant Domain Name.

40. The aforesaid acts by the registrant of the Defendant Domain Name constitute registration, maintenance, trafficking in, and/or use of a domain name that is confusingly similar to Plaintiff's FYRE FESTIVAL Marks, with bad-faith intent to profit therefrom.

41. In light of the registrant's concealment of his/her/its identity and purported location outside the United States, Plaintiff is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) or, alternatively, Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

42. The aforesaid acts by the registrant of the Defendant Domain Name constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

43. The aforesaid acts have caused, and are causing, great and irreparable harm to Plaintiff and the public. The harm to the public includes the potential for fraud and deception stemming from use of the domain that is intended to mislead consumers. The harm to Plaintiff includes harm to the value and goodwill associated with the FYRE FESTIVAL Marks that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

44. Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Plaintiff is entitled to an order directing the registry for the Defendant Domain Name to change the current registrar to Plaintiff's registrar of choice and directing the registrant to be changed to Plaintiff.

## COUNT TWO:
### (*In-Rem* Trademark Infringement)

45. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

46. At the time the Defendant Domain Name was registered, renewed, re-registered, and/or used, Plaintiff possessed valid common law and statutory trademark rights in the FYRE FESTIVAL Marks.

47. In light of the registrant's concealment of his/her/its identity and purported location outside the United States, Plaintiff is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) or, alternatively, Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

48. The registration and use of the Defendant Domain Name is a use in commerce.

49. The registration and use of the Defendant Domain Name affects Plaintiff's ability to use its FYRE FESTIVAL Marks in commerce.

50. The Defendant Domain Name and its registrant have no valid rights in the FYRE FESTIVAL Marks.

51. Use by the Defendant Domain Name and its registrant of the FYRE FESTIVAL Marks is without the permission or authorization of Plaintiff.

52. The aforesaid registration and/or use of the Defendant Domain Name have caused and are likely to continue to cause confusion, mistake, and/or deception among consumers and the public, leading the public falsely to believe that the Defendant Domain Name and/or the website provided thereunder are sponsored or approved by, or are in some way connected with Plaintiff.

53. The aforesaid registration and/or use of the Defendant Domain Name constitutes direct intentional infringement of Plaintiff's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54. The aforesaid acts have caused, and are causing, great and irreparable harm to Plaintiff and the public. The harm to the public includes the potential for fraud and deception stemming from use of the domain that is intended to mislead consumers. The harm to Plaintiff includes harm to the value and goodwill associated with the FYRE FESTIVAL Marks that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests of this Court:

1. That the Court order preliminary and permanent injunctive and other equitable relief to disable the use of the Defendant Domain Name.

2. That judgment be entered in favor of Plaintiff on its claims of cybersquatting and trademark infringement.

3. That the Court order the domain registry for the Defendant Domain Name to change the registrar for the Defendant Domain Name to Plaintiff's registrar of choice, and order the registrar to change the registrant to Plaintiff.

4. That the Court order an award of costs and reasonable attorney's fees incurred by Plaintiff in connection with this action pursuant to 15 U.S.C. § 1117(a); and

5. That the Court order an award to Plaintiff of such other and further relief as the Court may deem just and proper.

Dated: September 29, 2025    By:    /s/ Attison L. Barnes, III
    Attison L. Barnes, III (VA Bar No. 30458)
    David E. Weslow (for *pro hac admission*)
    WILEY REIN LLP
    2050 M Street NW
    Washington, DC 20036
    Tel: (202) 719-7000
    abarnes@wiley.law
    dweslow@wiley.law

    Jason Schaeffer (for *pro hac admission*)
    ESQWIRE.COM P.C.
    8 Kings Highway West
    Suite B
    Haddonfield, NJ 08033
    Tel: (856) 874-9651
    jason@esqwire.com

    *Counsel for Plaintiff*
    *LimeWR Fyre OÜ*