**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| LIMEWR FYRE OU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-1629 (MSN/WEF) |
| | ) |
| FYREFESTIVAL.COM, | ) |
| an Internet Domain Name, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff LIMEWR FYRE OU's ("Plaintiff") motion for

default judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2).  (Dkt.

12.).  In this *in rem* action, Plaintiff seeks entry of default judgment against the internet domain

name fyrefestival.com ("Defendant Domain Name").  Pursuant to 28 U.S.C. § 636(b)(1)(C), the

undersigned magistrate judge is filing with the Court these proposed findings of fact and

recommendations, a copy of which will be provided to all interested parties.  For the reasons set

forth below, the undersigned recommends that Plaintiff's motion for default judgment be granted

and that the Court order the transfer of the Defendant Domain Name to Plaintiff.[1]

---

[1]     Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); Motion for Service by Publication (Dkt. 3); Memorandum in Support of Motion for Service by Publication (Dkt. 4); Declaration Regarding Motion for Service by Publication (Dkt. 7); Court's Order Granting Motion for Service by Publication (Dkt. 6); Plaintiff's Request for Entry of Default (Dkt. 10); Clerk's Entry of Default (Dkt. 11); Plaintiff's Motion for Default Judgment (Dkt. 12) ("Mot. Default J."); Memorandum of Law in Support of Plaintiff's Motion for Default Judgment (Dkt. 13) ("Mem. Supp."); and all attachments and exhibits submitted with those filings.

**Procedural Background**

On September 29, 2025, Plaintiff, an Estonian limited liability company, filed this *in rem* action against fyrefestival.com alleging a violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (Count 1), and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) (Count 2). Compl. ¶¶ 3, 5. The Complaint states that the Fyre Festival was a "luxury music festival" that took place in 2017 and was promoted through a global social media campaign that reached hundreds of millions of people. *Id*. ¶¶ 12,13. Plaintiff alleges that it has exclusive right, title, interest, and goodwill for all common law and registered trademark rights and intellectual property associated with the name "Fyre Festival" (the "Fyre Festival Mark"). *Id*. ¶ 10. Plaintiff further alleges that the Defendant Domain Name, fyrefestival.com, uses Plaintiff's mark without permission and redirects the consumer to a commercial travel booking website, and thus constitutes cybersquatting and trademark infringement. *Id*. ¶¶ 23, 24, 30-32. As relief, Plaintiff seeks an order requiring the domain registry for the Defendant Domain Name to change the registrar for the Defendant Domain Name to Plaintiff's registrar of choice and order the registrar to change the registrant to Plaintiff. *Id*. Prayer for Relief; Mem. Supp., at pg. 15.

On October 3, 2025, Plaintiff filed its Motion for Service by Publication supported by a brief, declaration of Plaintiff's counsel, David E. Weslow, and exhibits. Dkts. 3, 4. The undersigned granted Plaintiff's motion on October 7, 2025, and authorized service by publication in either *The Washington Times* or *The Washington Post*. Dkt. 6. The October 7, 2025 Order required the Defendant to answer or otherwise respond to the Complaint within twenty-one (21) days from the date of publication. *Id*. The undersigned also required Plaintiff to serve a copy of the October 7 Order on the registrant of the Defendant Domain Name through the contact

information and/or the contact method identified in the domain name registration record for the Defendant Domain Name. *Id.* On October 16, 2025, Plaintiff's counsel, Mr. Weslow, filed a declaration confirming that Plaintiff had published the October 7 Order in *The Washington Times* on October 10, 2025, and that it had served a copy of the Order on the registrant of the Defendant Domain Name through the contact information and/or the contact method identified in the domain name registration record for the Defendant Domain Name. Dkt. 7. As a result, the Defendant was required to answer or otherwise respond to the Complaint by October 31, 2025. Dkts. 6, 7. No one on behalf of the Defendant Domain Name filed an answer or otherwise responded to the Complaint by October 31, 2025, or any time thereafter.

On November 4, 2025, Plaintiff filed its Request for Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(a), supported by a declaration from its counsel, Mr. Weslow. Dkt. 10, 10-1. The Clerk entered default as to the Defendant Domain Name on November 5, 2025. Dkt. 11.

On November 21, 2025, Plaintiff filed its Motion for Default Judgment as to the Defendant Domain Name pursuant to Fed. R. Civ. P. 55(b) and accompanying memorandum of law and exhibits. Dkts. 12, 13. Plaintiff noticed the Motion for Default Judgment for a hearing before the undersigned for December 12, 2025. Dkt. 14. Plaintiff also filed certificates of service indicating that the Motion for Default Judgment, memorandum in support of its motion, and notice of hearing date were properly served on the registrant of the Defendant Domain Name through the contact information and/or the contact method identified in the domain name registration record for the Defendant Domain Name. *Id.* On December 12, 2025, counsel for Plaintiff appeared and presented argument in support of its motion, and no one appeared on behalf of the Defendant Domain Name. Dkt. 15. In fact, to date, no party with an interest in the Defendant Domain Name has appeared or otherwise participated in these proceedings.

Finding the allegations in the Complaint to be well-pleaded and uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

**Facts Alleged in the Complaint and Deemed Admitted**

Fed. R. Civ. P. 55 provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of the Defendant to file an answer or other responsive pleading in a timely manner, the Clerk entered default as to the Defendant Domain Name. Dkt. 11. A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (stating that when a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). In this case, the following facts alleged in the Complaint are deemed admitted.

*The Parties*

Plaintiff is an Estonian limited liability company with its principal place of business at F.J. Wiedemanni tn 6-5a, Kesklinna linnaosa, 10126 Tallinn, Estonia. Compl. ¶ 3.

Defendant Domain Name, fyrefestival.com, is an Internet domain name registered to a person named Liam Spencer who is a resident of England. Compl. ¶ 4, Exhibit A.

*The Fyre Festival Mark*

As noted above, the Fyre Festival was a "luxury music festival" that was held in 2017 and was promoted through a global social media campaign that reached hundreds of millions of people.

Compl. ¶¶ 12, 13.[2] Fyre Holdings, Inc. was the original creator and owner of the Fyre Festival and its trademark. *Id*. ¶ 2. Fyre Holdings, Inc. registered the term "Fyre Festival" as a U.S. federal trademark on June 14, 2020 (Registration No. 5962393) and on March 5, 2024 (Registration No. 7322932). *Id*. ¶ 20, Exhibit C. In June 2025, Fyre Holdings, Inc. placed the brand for sale via auction and Plaintiff succeeded in acquiring the Fyre Festival Mark. *Id*. ¶ 15. On or about July 23, 2025, Plaintiff and Fyre Holdings, Inc. executed a purchase agreement through which, among other things, Plaintiff acquired all rights, title, interest, and goodwill for all common law and registered trademark rights and intellectual property associated with the Fyre Festival Mark. *Id*. ¶ 10. As part of the transaction, Fyre Holdings Inc.[3] completed trademark assignments to Plaintiff transferring all rights, title, and interest in the Fyre Festival Mark to Plaintiff, which was recorded by the U.S. Patent and Trademark Office on September 23, 2025. *Id*. ¶ 11, Exhibit B. As a result, Plaintiff is the owner of the U.S. federal trademark registrations using the term "Fyre Festival." *Id*. ¶ 20.

*The Fyre Festival Marketing Campaign*

The Fyre Festival was created and marketed as an opulent Bahamas getaway, with yachts and luxury cabanas, celebrity-chef catering, and live music entertainment. Compl. ¶ 14. The Fyre Festival was first publicly promoted in December 2016. *Id*. ¶ 12. Since then, the Fyre Festival Mark has been exclusively associated with the music festival. *Id*. In 2016, global influencers employed a carefully coordinated global social media campaign to promote the Fyre Festival. *Id*.

---

[2] Although advertised as a luxury music festival, the festival itself was an artistic and financial failure, and, more strikingly, marked by poor planning and grossly inadequate resources that resulted in disastrous conditions. *See* Netflix Documentary, *The Greatest Party That Never Happened* (2019) cited in the Complaint at ¶ 14.

[3] Paragraph 11 of the Complaint refers to Fyre Holdings LLC but elsewhere in the Complaint and attachments Fyre Holdings is referred to as Fyre Holdings, Inc. The precise corporate structure of Fyre Holdings is immaterial for purposes of this Motion.

¶ 13. The media campaign to promote the Fyre Festival reached hundreds of millions of people within a span of days. *Id*. ¶ 12.  The campaign involved a video featuring the Fyre Festival logo, promising "an immersive musical festival." *Id*. ¶ 13. Details from Fyre Media's investor pitch deck (https://www.vanityfair.com/news/2017/05/fyre=festival-pitch-deck) claimed that Fyre recruited 400 influencers to post an orange tile on Instagram at 5:00 p.m. on December 12, 2016, and that the result was the post reached 300 million people in 24 hours, https://journals.library.columbia.edu/index.php/CBLR/announcement/view/184. *Id*.

During and since the original festival, the owners of the Fyre Festival Mark sold merchandise, shirts and other Fyre Festival branded items. *Id*. ¶ 15. The Fyre Festival was the subject of two documentaries, including a Netflix documentary released in 2019. *Id*. In 2025, Fyre Holdings, Inc. worked to launch a second festival, and a Broadway musical is currently in production. *Id*. ¶ 15. On September 16, 2025, Plaintiff publicly announced its acquisition of the Fyre Festival and its plan to relaunch the brand. *Id*. ¶ 16.[4] Additionally, Plaintiff announced its collaboration with VISA and Ryan Renyolds on a new VISA advertisement and slogan featuring the Fyre Festival Mark. *Id*. ¶ 17.[5]

*Unlawful Registration and Use of the Defendant Domain Name*

The Defendant Domain Name was most recently re-registered on or around July 21, 2025. Compl. ¶ 22. The current registrant of the Defendant Domain Name uses the Defendant Domain to redirect consumers to greaterantillieshotels.com, which is a travel booking website for which the domain registrant receives compensation. *Id*. ¶ 23. In the body of the greaterantillieshotels.com

---

[4]    *See* LimeWire buys Fyre Festival, asking "What Could Possibly Go Wrong," https://ccc.cnbc.com/2025/09/16.

[5]    *See* https://www.fastcompany.com/91404189.

website there is text that identifies in whole the Fyre Festival Mark. *Id*. ¶ 24.[6] The use of Plaintiff's mark in the Defendant Domain Name has continued through at least July 17, 2025. *Id*. ¶ 25.

The current registrant of the Defendant Domian Name has never used the domain to resolve to a website with substantive content. *Id*. ¶ 27.  It has been used, however, by the registrant to obtain compensation from travel booking links. *Id*. The registrant receives financial compensation when visitors navigate to fyrefestival.com and click on one of the travel website links. *Id*. ¶ 28.

The registrant has had actual notice of the Fyre Festival Mark since prior to registering or re-registering the Defendant Domain Name. *Id*. ¶ 29. None of the links or references to the Fyre Festival Mark are or have ever been authorized by Plaintiff to be used by the registrant or on the defendant domain, and many of the uses of the Fyre Festival Mark on the defendant domain direct consumers to service providers that also have no affiliation with Plaintiff and are not authorized to use the Fyre Festival Mark. *Id*. ¶ 30. The registrant has been using the Fyre Festival Mark, without Plaintiff's authorization. *Id*. ¶ 31. The registrant has been offering and/or promoting services under the Fyre Festival Mark for his/her/its own financial gain, through *inter alia*, pay-per-click advertising including advertising that uses the Fyre Festival Mark, and sales of services related to the mark. *Id*. ¶ 32.

### Jurisdiction and Venue

In this case, the Court must have both subject matter jurisdiction and *in rem* jurisdiction over the Defendant Domain Name and venue in this judicial district must be proper before the Court can render a default judgment.

---

[6]    See Archives.org Original Capture July 17, 2025, Accessed September 17, 2025, https://web.archive.org/web/20250717022913.

*Subject Matter Jurisdiction*

Plaintiff brings this cause of action pursuant to the ACPA (15 U.S.C. § 1125 *et seq.*) and the Lanham Act (15 U.S.C. § 1114(1)). Therefore, the undersigned finds that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the violations of the ACPA and Lanham Act raise federal questions. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), which grants jurisdiction to federal district courts for civil actions arising under federal trademark law.

*In Rem Jurisdiction*

In order to establish *in rem* jurisdiction, 15 U.S.C. § 1125(d)(2)(A) requires Plaintiff to establish that the Defendant Domain Name violates Plaintiff's rights as the owner of the Fyre Festival Mark and that Plaintiff is unable to assert *in personam* jurisdiction over the registrant of the Defendant Domain Name or through due diligence is not able to find a person who would have been a defendant in this civil action. Specifically, 15 U.S.C. § 1125(d)(2)(A) provides, in pertinent part:

> The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if –
>
>> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and
>>
>> (ii) the court finds that the owner –
>>
>>> (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>>>
>>> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by –
>>>
>>>> (aa) sending notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the

8

registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action.

As set forth in the Fed. R. Civ. P. 12(b)(6) analysis below, the facts alleged in the Complaint and deemed admitted for purposes of this motion, properly state a claim for cybersquatting in violation of the ACPA and trademark infringement in violation of the Lanham Act, and therefore the undersigned finds the first statutory prong needed to establish *in rem* jurisdiction is satisfied. *See* 15 U.S.C. § 1125(d)(2)(A)(i).

Next, Plaintiff satisfied the second statutory prong needed to establish *in rem* jurisdiction under 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because the registrant, Liam Spencer, resides outside of the United States and therefore Plaintiff cannot obtain *in personam* jurisdiction over him in this cybersquatting and trademark infringement action. Dkts. 1-1, 4-1 Exhibit 1.[7]

In addition, Plaintiff complied with the provisions of 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa) and (bb).[8]  On September 29, 2025, in accordance with § 1125(d)(2)(A)(ii)(II)(aa), Plaintiff provided notice by mail and e-mail to the registrant, Mr. Spencer, of the alleged violation and of Plaintiff's intent to proceed *in rem* under 15 U.S.C. § 1125(d). Dkt. 4-1.  The notice also included a copy of the Complaint, accompanying exhibits, and summons. *Id*. After sending notice to the registrant of the Defendant Domain Name at the e-mail addresses provided by the registrant to the

---

[7]     The registrant information for the Defendant Domain Name filed with the registrar reflects that Mr. Spencer is the registrant and lives in England. Dkt. 1-1.

[8]     15 U.S.C. § 1125(d)(2)(A)(ii)(I) and § 1125(d)(2)(A)(ii)(II), provide independent grounds upon which *in rem* jurisdiction may be established. The undersigned finds that Plaintiff has established jurisdiction under § 1125(d)(2)(A)(ii)(I) and therefore need not comply with the requirements of § 1125(d)(2)(A)(ii)(II)(aa) and (bb) to establish *in rem* jurisdiction.  However, the fact that Plaintiff chose to do so gives the Court greater certainty that all interested parties were given notice of these proceedings and an opportunity to contest the motion.

registrar, the ACPA's remaining requirement was "publishing notice of the action as the court may direct."  *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).  On October 7, 2025, the Court granted Plaintiff's motion for alternative service and permitted service by publication. Dkt. 6. On October 16, 2025, Plaintiff filed a declaration of publication, demonstrating that Plaintiff had complied with the Court's October 7, 2025 Order by publishing notice of this action and a copy of the Order in *The Washington Times* on October 10, 2025.  Dkt. 7. Plaintiff also served a copy of the Order on the Defendant Domain Name via the e-mail address provided in the domain name registration. *Id*.

For these reasons, the undersigned finds that Plaintiff properly established *in rem* jurisdiction pursuant to 15 U.S.C. § 1125(d)(2)(A).

*Venue*

Pursuant to 15 U.S.C. § 1125(d)(2)(C), for an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located.  Here, Plaintiff properly alleges that the principal place of business of the registry, Verisign, Inc., is this judicial district.[9] Compl. ¶ 9.  Therefore, the undersigned finds venue to be proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 1125(d)(2)(C).

### Service of Process

Fed. R. Civ. P. 4(n)(1) states that the "court may assert service over property if authorized by a federal statute" and notice to claimants of the property is given as provided in the statute.  The ACPA explicitly authorizes service of process for *in rem* actions.   Specifically, 15 U.S.C. § 1125(d)(2)(B) provides that the "actions under subparagraph (A)(ii) shall constitute service of

---

[9]    The Court takes judicial notice of the fact that Verisign, Inc.'s principal place of business is in Reston, Virginia, which is within the Eastern District of Virginia.

process." As noted above, subparagraph (A)(ii) requires the Plaintiff to satisfy either of the two following conditions:

> (I) [Plaintiff] is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>
> (II) through due diligence [Plaintiff] was not able to find a person who would have been a defendant in a civil action under paragraph (1) by –
>
>> (aa) sending notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>>
>> (bb) publishing notice of the action as the court may direct promptly after filing the action.

Satisfying one of these two conditions is also necessary to establish *in rem* jurisdiction under the ACPA. When addressing *in rem* jurisdiction above, the undersigned determined that Plaintiff satisfied the requirements of subparagraph (A)(ii)(I). Specifically, Plaintiff properly alleges that the registrant resides outside of the United States and therefore Plaintiff cannot obtain *in personam* jurisdiction over him in this cybersquatting and trademark infringement action. Dkts. 1-1, 4-1 Exhibit 1. As noted above, Plaintiff also properly effected service of process under § 1125(d)(2)(A)(ii)(II)(aa) and (bb).

### Fed. R. Civ. P. 12(b)(6) Analysis of Plaintiff's Cybersquatting Claim

Before entering default judgment, the Court must evaluate Plaintiff's Complaint against the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the Complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

Plaintiff's first claim alleges cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d). (Compl., at 5). The ACPA allows the owner of a mark to file an *in rem* action against a domain name if the domain name violates "any right of the owner of a mark." *See* 15 U.S.C.

§ 1125(d)(2)(A).  This encompasses rights against cybersquatting provided for under § 1125(d)(1).  *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002).  Therefore, the owner of a mark can be entitled to *in rem* relief upon proving a violation of § 1125(d)(1).

Section 1125(d)(1) creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a "bad faith intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A).  Thus, to sufficiently plead an ACPA cause of action, a plaintiff must properly plead facts that establish: (1) the plaintiff's ownership of a valid and protectable mark; (2) the plaintiff's mark is distinctive; (3) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (4) the registrant's bad faith intent to profit from the mark or domain name.  *See id.*

Plaintiff's second claim alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).  The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive.  15 U.S.C. § 1114(1).  Thus, to sufficiently plead a Lanham Act violation a plaintiff must properly plead facts that establish: (1) it has a valid and protectable trademark; and (2) the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.  *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006).

In this case, the undersigned finds that Plaintiff has sufficiently pleaded facts to establish both cybersquatting in violation of the ACPA and trademark infringement in violation of the Lanham Act.

### 1. Plaintiff Possesses a Valid and Protectable Mark

The undersigned finds that Plaintiff has sufficiently demonstrated protectable rights in the

Fyre Festival Mark.  The ACPA protects both registered marks as well as unregistered common law marks.  *See* 15 U.S.C. § 1125(a), (d)(2)(A)(i); *B & J Enters., Ltd. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009).  Since December 12, 2016, when the term Fyre Festival was first publicly promoted, the marks have been exclusively associated with the famous/infamous "luxury music festival," the Fyre Festival. *Id*. ¶ 12.  The record before the Court reflects that the Fyre Festival Mark acquired common law trademark rights beginning December 12, 2016. On July 23, 2025, Plaintiff acquired all rights, title, interest, and goodwill for all common law and registered trademark rights and intellectual property associated with the name Fyre Festival.  Compl. ¶¶ 10, 11. Moreover, Plaintiff is the owner of U.S. federal trademark registrations using the term "Fyre Festival." *Id*. ¶ 20, Exhibits 1-2, 1-3.[10]  Plaintiff's registration of the term "Fyre Festival" constitutes *prima facie* evidence of the validity of, and Plaintiff's exclusive right to use, the Fyre Festival Mark. Therefore, Plaintiff possesses valid and protectable rights in the Fyre Festival Mark and is entitled to enforce the provisions of Section 1125(d) against any domain name that violates those rights.

### 2. Plaintiff's Fyre Festival Mark is Distinctive

The undersigned finds that Plaintiff's Fyre Festival Mark is distinctive, as required under the statute.  15 U.S.C. § 1125(d)(1)(A)(ii); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).  Trademarks may be considered "fanciful," "arbitrary," or "suggestive," which are all inherently "distinctive."  *Venetian Casino Resort v. Venetiangold.Com*, 380 F.Supp.2d 737, 742 (E.D. Va. July 28, 2005) (citing *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996)).  They may also be considered merely "descriptive," which is not inherently distinctive, but is distinctive if the mark acquires "secondary

---

[10]    Registration No. 5962393 and Registration No. 7322932.  *Id*. ¶ 20, Exhibits 1-2, 1-3.

meaning," *i.e.*, "if in fact a substantial number of present or prospective customers understand the designation" to refer to a particular business enterprise. *Id.* (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)).  Registration of a trademark with the United States Patent and Trademark Office ("USPTO") serves as *prima facie* evidence that a mark has acquired distinctiveness. *See Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001).  Such registered marks therefore "begin[] with the presumption that [they], at a minimum, are 'descriptive and have secondary meaning.'" *Venetian Casino Resort*, 380 F.Supp.2d at 742.

Here, Plaintiff has obtained two trademark registrations from the United States Patent and Trademark Office for the Fyre Festival Mark. Compl. ¶ 20, Exhibits 1-2, 1-3.  Thus, the undersigned presumes Plaintiff's Fyre Festival Mark is, at the very least, descriptive and has obtained secondary meaning. *See Venetian Casino Resort*, 380 F.Supp.2d at 742. That presumption is further supported by the full record. Indeed, Plaintiff properly alleges that the Fyre Festival Mark was used beginning in December 2016 as part of a successful global social media campaign to promote the 2017 Fyre Festival. *Id.* ¶¶ 12-14. Even after the original festival the marks were used to sell merchandise, were the subject of two documentaries and are potentially going to be used as part of a VISA advertisement campaign and the basis for a Broadway production. *Id.* ¶¶ 15, 17. The Fyre Festival Mark was created to promote the music festival of the same name and is inextricably linked to the festival and therefore the undersigned finds the mark to be inherently distinctive.

### 3. Defendant Domain Name is Confusingly Similar to Plaintiff's Mark

The undersigned finds that the Defendant Domain Name, fyrefestival.com, is confusingly similar to Plaintiff's Fyre Festival Mark. *See* 15 U.S.C. § 1125(d)(1)(A)(ii); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

14

The infringing domain name does not need to be identical to the registered mark, only confusingly similar. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I); *See also Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010). The confusingly similar standard is satisfied where a domain name is similar to a protected mark such that a "reasonable consumer 'might think they were used, approved, or permitted by [the plaintiff].'" *Venetian Casino Resort*, 380 F. Supp. 2d at 743 (quoting *Harrods, Ltd.*, 157 F.Supp.2d 658, 677 (E.D. Va. June 27, 2001), *rev'd on other grounds by* 302 F.3d 214 (4th Cir. 2002)). Stated differently, a confusingly similar domain name and mark are "so similar in sight, sound and meaning that they could be confused." *Id.* (internal quotations and citation omitted).

Here, the Defendant Domain Name, fyrefestival.com, fully incorporates and duplicates Plaintiff's Fyre Festival Mark. The construction of the Defendant Domain Name was clearly intended to confuse consumers, and their similarity in sight and meaning could reasonably do so. Plaintiff has alleged sufficient facts to satisfy the "confusing similarity" requirement of the ACPA. *See Agri-Supply Company, Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. Sept. 13, 2006) (holding the domain name was confusing similar because it was "virtually identical" to Plaintiff's trademark).

### 4. Registrant Has Acted with a Bad Faith Intent to Profit from Plaintiff's Mark

Finally, the undersigned finds that Plaintiff has demonstrated the registrant's bad faith intent to profit from Plaintiff's Fyre Festival Mark. The facts properly alleged and deemed admitted establish that the registrant uses the fyrefestival.com website to redirect consumers to a travel booking website unrelated to Plaintiff or any authorized use of its mark. Compl. ¶¶ 23-27. The registrant then receives financial compensation when consumers then click on one of the travel website links. *Id*. ¶ 28. The record clearly establishes that the registrant is profiting from the

15

unauthorized use of the Plaintiff's mark and doing so in bad faith.

Under the ACPA, bad faith intent may be considered by weighing nine factors:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).   The factors are given to courts as a guide and need not be exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).  Indeed, "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may

nevertheless be considered under the statute.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

Factors I through IV overwhelmingly support Plaintiff's allegation of a bad faith intent to profit from use of the Fyre Festival Mark. First, the registrant of the fyrefestival.com website has no intellectual property rights in the domain name, or any portion of the domain name. In fact, the fyrefestival.com domain name is identical to the protected Fyre Festival Mark. The registrant has no trademark rights in the domain name and clearly has no right to use Plaintiff's mark. The fyrefestival.com website also does not incorporate or consist of the legal name of "the person" nor has it been previously used by the registrant in connection with the bona fide offering of any goods or services. Moreover, there is no evidence before the Court to suggest that the registrant engaged in bona fide noncommercial or fair use of the mark in a site accessible under the domain name. Quite the opposite, all reasonable inferences to be drawn from the properly alleged facts establish that the registrant acted with a nefarious intent to profit by deceiving consumers as to an association between Plaintiff and the travel booking websites.

Additionally, the undersigned finds that factor V supports Plaintiff's allegation of bad faith. The registrant has duplicated and fully incorporated Plaintiff's mark into the Defendant Domain Name for commercial gain, and without authorization or permission, thereby creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

Applying the statutory factors to the unique facts of this case, Plaintiff has sufficiently established a "bad faith intent to profit" by the registrant. Clearly the registrant is attempting to profit from the unauthorized use of Plaintiff's Fyre Festival Mark. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d at 268 (noting the bad faith analysis depends upon "unique

circumstances" of each case).

### Requested Relief

Plaintiff seeks an Order of the Court that transfers ownership and control of the Defendant Domain Name to Plaintiff.  Compl. at Claim for Relief; Mem. Supp. at pg. 15.[11]  The undersigned recommends that the Court grant Plaintiff's request.

Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  Indeed, § 1125(d)(2)(D) limits the remedy for any cause of action brought *in rem* to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  Plaintiff, having established violations of the ACPA and the Lanham Act in this *in rem* action, is entitled to its requested relief of transfer of the Defendant Domain Name to Plaintiff, as permitted by 15 U.S.C. §§ 1125(d)(1)(C), (2)(D).  *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002).

### Recommendation

For the reasons outlined above, the undersigned United States magistrate judge recommends that the Court grant default judgment against the Defendant Domain Name with respect to Plaintiff's claims for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the Lanham Act, 15 U.S.C. § 1114(1).  The undersigned further

---

[11]   In the Complaint, Plaintiff also seeks an award of attorney's fees and costs. Compl. Prayer for relief at § 4. Given that this is an *in rem* action and Plaintiff did not request attorney's fees and costs in its request for Default Judgment, the Court will assume Plaintiff has abandoned this request.

recommends that the Court grant Plaintiff's requested relief in the form of an Order requiring Verisign, Inc., the operator of the .COM registry, to change the registrar of record for the Defendant Domain Name, fyrefestival.com, in the .COM registry to Plaintiff's registrar of choice, and for the registrar to take all necessary steps to update the registrant for fyrefestival.com as directed by Plaintiff.

**Notice**

Plaintiff is directed to e-mail a copy of this Report and Recommendation to the registrar and registrant, Liam Spencer, at the e-mail address the registrant provided to the registrar. Plaintiff is further directed to file a declaration within seven (7) days of the filing of this Report and Recommendation via the Court's electronic filing system certifying e-mail service of this Report and Recommendation on the registrar and the registrant. Pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, the parties are advised that objections to this Report and Recommendation must be filed within fourteen (14) days of its service. Failure to file timely objections waives appellate review of any judgment or decision based on this Report and Recommendation.

_William E. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

March 11, 2026
Alexandria, Virginia